IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 22-cv-00456-CMA-MEH

MARK CARLSON,

    Plaintiff,

v.

STATE FARM MUTUAL AUTOMIBLE INSURANCE COMPANY,

    Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S EXPERT**

---

This matter is before the Court on Plaintiff's Opposed Motion to Strike Defendant's Retained Expert Jacqueline Bloink. (Doc. # 31.) For the foregoing reasons, the motion is granted.

### I.    BACKGROUND

This is an insurance coverage dispute arising from a car accident. (Doc. # 3.) Plaintiff, Mark Carlson, alleges that he was injured in a motor vehicle collision on December 31, 2018. (*Id.* at ¶ 6.) At the time of the accident, Mr. Carlson had an insurance policy with State Farm Mutual Automobile Insurance Company which included up to $250,000 per person in underinsured motorist ("UIM") coverage. (*Id.* at ¶ 7.) According to Mr. Carlson, the damages he sustained in the accident exceed the at-fault driver's $50,000 in insurance coverage. (*Id.* at ¶¶ 7, 13.) Therefore, Mr. Carlson sought insurance benefits from his own insurer, Defendant State Farm. (*Id.* at ¶ 9–12.)

As of January 20, 2022, however, State Farm has "refused to pay a reasonable and fair amount of UIM benefits," causing Mr. Carlson to file this lawsuit. (*Id.* at ¶ 13.)

Both sides retained expert witnesses in support of their respective cases. State Farm retained Jacqueline Bloink, a "Healthcare Reimbursement (Billing), Forensic Medical Coding, Usual Customary Reasonable (UCR) – Medical Bill Evaluation (Reasonable Value – *Non-Discounted Full Billed Charges*), Healthcare Compliance / Healthcare Fraud Consultant-Expert Witness." (Doc. # 31-1 at 1.) Ms. Bloink was retained to opine as to the reasonable and customary cost of Mr. Carlson's past incurred, and proposed future, medical treatment related to the accident. (Doc. # 38 at 1.) Mr. Carlson now seeks to exclude Ms. Bloink's testimony under Federal Rules of Evidence 403 and 702. (Doc. # 31.)

## II.     LEGAL STANDARD

Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Fed. R. Evid. 702. Before the expert can offer such opinions, however, the proponent of the testimony must demonstrate, by a preponderance of the evidence, that the expert's testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009); *United States v. Crabbe*, F. Supp. 2d 1217, 1220–21 (D. Colo. 2008). To do so, the proponent must establish that "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the

expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The trial court acts as a "gatekeeper," reviewing the proffered opinions for both relevance and reliability before determining whether the evidence is admissible under Rule 702. *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–95 (1993) *and Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). The overarching purpose of the court's inquiry is "to make certain that the expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Goebel*, 346 F.3d at 992 (quoting *Kumho Tire*, 526 U.S. at 152).

Generally, "rejection of expert testimony is the exception rather than the rule." *United States v. Nacchio*, 519 F.3d 1140, 1154 (10th Cir. 2008), *vacated in part on rehearing en banc*, 555 F.3d 1234 (10th Cir. 2009); *see also* Fed. R. Evid. 702 (2000 Advisory Comm. Notes). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### III.   ANALYSIS

According to her report, Ms. Bloink intends to testify about the reasonableness of Mr. Carlson's past incurred, and proposed future, medical expenses which he is claiming as damages. (Doc. # 31-3 at 1, 4.) Specifically, Mr. Carlson is claiming between $38,450.82 and $45,456.47 in past billed medical expenses (Doc. # 31 at 2;

3

Doc. # 31-3 at 3–4, 19), and "future medical expenses approach[ing] $500,000"[1] (Doc. # 3 at ¶ 1; Doc. # 38-4 at 3), related to injuries allegedly caused by the December 2018 car accident. Ms. Bloink intends to testify that the reasonable value Mr. Carlson's past billed and future expected medical expenses, is in fact, significantly less. (Doc. # 31-3 at 3–4, 19.) Specifically, she concludes that the reasonable value of Mr. Carlson's past billed medical expenses is $22,111.92, and the cost of one recommended future treatment is $28,846.68—almost $30,000 less than Mr. Carlson's proffered expert, Dr. Matthew W. Hyzy's, estimate of $58,492.38 for that recommended care.[2]

Mr. Carlson now seeks to exclude Ms. Bloink's testimony on the ground that it is inadmissible under (1) Rule 702 because "her experience as a bill auditor does not enable her to testify whether a particular medical charge is 'Usual, Customary and Reasonable,'" and "there is no evidence" that the data upon which she bases her opinions is objective, reliable, and relevant (Doc. # 31 at 3); and (2) Rule 403 because it is irrelevant (Doc. # 31 at 5). The Court agrees that State Farm has not established the reliability and relevance of Ms. Bloink's opinions, and it therefore grants Mr. Carlson's Motion.

---

[1] Mr. Carlson's Complaint (Doc. # 3) does not provide exact numbers for his alleged past and future medical costs. The instant Motion states he has disclosed $38,450.82 in past medical damages and his future medical requirements are expected to be $1,027,943.90. (Doc. # 31 at 2.) However, Ms. Bloink's report states that "[t]he total Past Billed Amount for services rendered to *Mark Carlson, Date of Incident 1/1/2019 was* $45,456.47" (Doc. # 31-1 at 3–4, 19), and the report prepared by Mr. Carlson's disclosed expert, Dr. Matthew W. Hyzy, calculates his future medical requirements at $492,303.03 (Doc. # 38-4 at 3, 31–35).

[2] The written portion of Ms. Bloink's report does not evaluate all the future medical care Dr. Hyzy predicts Mr. Carlson will require over the course of his lifetime. Rather she "estimated the recommended treatment for one treatment that was listed by Dr. Hyzy." (Doc. # 31-3 at 4, 19.)

4

Ms. Bloink's method for calculating the reasonable value of Mr. Carlson's medical care involved (1) reviewing various "data sources" that aggregate information about the amount billed for various medical procedures (Doc. # 31-3 at 10–12); (2) selecting some of these data sources to rely on (*id.*); and (3) searching for the relevant billing code within the data source (*id*. at 15–17). In other words, Ms. Bloink simply looked at the procedure codes for Mr. Carlson's past and recommended future treatments, looked up those codes in one or more databases, and compared the price Mr. Carlson was/will be charged with the prices listed in the databases. State Farm has failed to establish that this is a reliable way to evaluate the reasonableness of Mr. Carlson's medical expenses. This methodology does not reflect any understanding of, or inquiry into, Mr. Carlson's alleged injuries, the medical procedure at issue, or how Mr. Carlson's medical needs compare to similar procedures that might be billed under the same or similar procedure codes. State Farm has failed to establish that such a rote code-based comparison is a reliable method for assessing the medical bills at issue in this case. Therefore, State Farm has failed to establish that this limited data source is a reliable basis for an expert opinion under Rule 702.

Moreover, Ms. Bloink's opinions based on the healthcare databases are irrelevant to the question of whether the charges Mr. Carlson incurred in the past and will incur in the future, are reasonable. *Belcher v. Kelley*, No. 19-CV-03367-REB-NYW, 2021 WL 62256, at *4 (D. Colo. Jan. 6, 2021). As Judge Blackburn recently explained,

> One aspect of relevance requires an expert's purported testimony to "fit" the facts of the case, that is, the opinion must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, [509 U.S. at 591] (citation and internal quotation marks omitted).

> *See also* [Fed. R. Evid.] 702(a) (expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue"). The question the jury here must answer is not what it might be reasonable to bill some hypothetical (insured) patient before he is seen by a physician, but rather whether the expenses [Plaintiff] actually incurred were reasonable and necessary in the circumstances which confronted his doctors at the time he sought their care.

*Id.* As such, State Farm has failed to establish Ms. Bloink's opinions are relevant to the issues at hand.

State Farm makes several arguments which the Court finds unpersuasive. For example, State Farm notes multiple times that Mr. Carlson's proffered expert, Dr. Hyzy, also "purports to opine regarding the reasonableness of the estimated future medical expenses," and relies on the same database as Ms. Bloink to do so. (Doc. # 38 at 8, 14–15 (citing Doc. # 38-5.)) As an initial matter, the Court notes that State Farm does not provide Dr. Hyzy's entire expanded medical cost assessment. Therefore, although the Court can see that Dr. Hyzy provides a definition for "Usual Customary & Reasonable" cost data, describes the Context4HealthCare database, and describes the selection of various types of codes, the Court cannot discern in what context Dr. Hyzy applied this information. (Doc. # 38-5.) More importantly, the admissibility of Dr. Hyzy's reports, opinions, and proposed testimony are not presently at issue as State Farm has not challenged them. The fact that Dr. Hyzy may have relied on similar data or performed similar analyses provides no support for Ms. Bloink's challenged opinions and proposed testimony.

State Farm also argues that *Belcher*, 2021 WL 62256, is not persuasive or applicable, particularly because the instant case involves questions of the

reasonableness of Mr. Carlson's proposed future treatment. (Doc. # 28 at 10–12.) However, this argument does not shed light on the Court's main concern, discussed above, regarding Ms. Bloink's data and methods. State Farm has not demonstrated the reliability and relevance of Ms. Bloink's opinions because the rote comparison of prices by medical billing code has not been shown to be reflective of Mr. Carlson's individual medical needs. *See Daubert*, 509 U.S. at 591. This remains true even considering not-yet-incurred medical expenses, the reasonable cost of which may vary based on Mr. Carlson's precise injuries, preexisting conditions, or access to providers offering care at different price points. *See Arizona v. Maricopa Cnty. Med. Soc'y*, 547 U.S. 332, 366 n.13 (Powell, J., dissenting) (explaining that medical services differ from typical services or commercial products because patients generally lack the ability to "'shop' for quality medical services at a lesser price.").

It is not disputed that Mr. Carlson bears the burden of proving damages, that "the correct measure of compensable damages for medical expenses is the necessary and reasonable value of the services[, and that] the amount paid is some evidence of their reasonable value." *Belcher*, 2021 WL 62256, at *2 (quoting *Lawson v. Safeway, Inc.*, 878 P.2d 127, 131 (Colo. App. 1994) (internal quotation marks omitted)). It is also undisputed that State Farm has the right to challenge the necessity and reasonableness of Mr. Carlson's proposed damages. However, State Farm has not demonstrated that Ms. Bloink's proposed testimony is a reliable means of presenting their challenge or that her opinions are "sufficiently tied to the facts of the case." *Daubert*, 509 U.S. at 591. Therefore, Mr. Carlson's motion to exclude Ms. Bloink's testimony is granted.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that Plaintiff's Opposed Motion to Exclude Defendant's Retained Expert Jacqueline Bloink (Doc. # 31) is GRANTED.

DATED: March 30, 2023

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge